IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MELANIE SMITH,<br><br>    Plaintiff,<br><br>vs.<br><br>THE CEDARS, INC., ELITE COMMUNITY MANAGEMENT, LLC, AND BRETT CLARK,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:12-CV-667 TS |

This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons discussed below, the Court will deny the Motion.

I. BACKGROUND

In 2003, Plaintiff Melanie Smith and her husband David Smith (collectively "the Smiths") purchased a home in Cedar Hills, Utah, which is part of the Cedars Homeowners Association ("HOA"). The Smiths have a son, A.V., who lives with them and has Down syndrome.

1

While living at that house, A.V. experienced bullying from some neighborhood children. In addition, when A.V. played in the Smiths' backyard he sometimes got caught in a neighbor's wrought-iron fence. In May 2006, the Smiths attempted to prevent A.V. from being bullied and getting caught in the wrought-iron fence by constructing a three-foot cedar plank enclosure in their backyard. Prior to construction, the Smiths inquired of several neighbors about the HOA's Architectural Review Committee ("ARC") process and how to receive approval for their plans. Mr. Smith called the HOA's property management company and left at least two voicemails indicating that the Smiths wished to install an enclosure and inquiring about the ARC process and how the Smiths could receive approval. Those voicemails were not returned.

While constructing the enclosure, the Smiths were notified by the HOA that they needed approval from the ARC. Accordingly, David Smith drew up a plan for the enclosure he was constructing, and he and his wife presented the proposal to the ARC on June 3, 2006. At the meeting on June 3, 2006, the Smiths presented a request for a reasonable modification/accommodation to the HOA's Covenants, Conditions, and Restrictions ("CC&Rs") and Design Standards. The Smiths presented evidence and argument to support their request.

On July 11, 2006, the Smiths received a letter from the HOA's property management company that the ARC had denied their request to install a cedar enclosure because it did not comply with the Design Standards. The letter also stated that the enclosure had to be removed within 15 days. On July 21, 2006, Mr. Smith sent a letter to the HOA's property management company requesting reconsideration and again requested a reasonable

modification/accommodation.  There is nothing in the record to indicate that the Smiths received a response to this letter.

In September 2007, the Smiths moved from their home in Cedar Hills, Utah to Auburn, Washington for a new job David Smith had taken.  However, the Smiths continued to travel to and from the residence in Cedar Hills and used it as a vacation home when it was not rented.

The Smiths eventually put the home up for sale and it was on the market from around November 2007 to January 2008.  The Smiths did not sell the home and, instead, determined that they would return to the Cedar Hills home when Mr. Smith completed the construction project that prompted their move to Washington.

The Smiths rented the house from August 2008 to July 2011.  In the spring of 2008, Plaintiff received a letter from Defendant Elite Community Management ("ECM"), the HOA's new property management company, which stated that the cedar enclosure was not compliant and needed to be removed.  The Smiths responded, explaining the circumstances concerning their son and the need for the enclosure.  The Smiths also stated that they would be residing in the Cedar Hills home within a few weeks.

On May 28, 2008, Defendant ECM responded stating that if the Smiths were occupying the home, then the enclosure would be approved.  Otherwise, it would have to be removed. Plaintiff responded on May 30, 2008, stating the enclosure would be removed if the house were sold.

Around July 2009, the Smiths received a notice of violation from the HOA's collections attorney regarding the cedar enclosure. On July 24, 2009, Plaintiff responded to the HOA's attorney. Plaintiff again explained the circumstances and the need for the enclosure. Plaintiff further explained that the move to Washington was temporary and that the Smiths would be returning to the Cedar Hills home.

On August 20, 2009, the HOA's attorney responded as follows:

> Our client has a strict policy allowing reasonable accommodations to the rules and regulations when dealing with disabled persons. This policy and the Fair Housing Act ("FHA") only require our client to allow for reasonable accommodation/modifications for a person currently using the unit. Once the disabled occupant is no longer using the unit, the unit must be restored into compliance with the rules and regulations. Per your emails, you currently do not reside in the unit. Consequently, the rules and regulations in their entirety apply to that unit.
> Additionally, our investigation into this matter has not shown that the Cedars HOA ever received sufficient documentation relating to your requested modification. Under current policy, it will be necessary to provide additional information, and to have certain filings made as to the property to insure that any purchaser, renter, or other party who may acquire an interest is put on notice that the modification is only temporary and must be removed to be in compliance.
> The Cedars HOA does hereby request that you provide sufficient information to justify the modification and its continued need. It is requested that you establish the current need for the modification and/or make a request as to why the current modification should remain. Further, it will be necessary to file documentation as to the modification (if it is to remain) on the title of the property. Those costs will be added to your next assessment.
> Since your fence is in violation of the architectural rules and regulations and only allowed because of the reasonable modification provisions of the Fair Housing Act, you must establish the current need or have the fence removed. Since there seems to be some confusion as to this matter, you are requested to take appropriate action within the next ten days.[1]

---

[1] Docket No. 8, Ex. 8.

Defendants assert that the Smiths did not respond to this letter. However, Plaintiff testified that she sent the HOA's attorney a copy of A.V.'s most recent Individualized Education Plan ("IEP") in response to the attorney's request for additional information.

On November 10, 2009, the HOA's attorney sent the Smiths a Second Notice of Violation stating that the enclosure was not approved and needed to be removed. A Third Notice of Violation was sent on January 19, 2010.

The HOA's accounting ledger indicates that on March 1, 2010, a fine began to be levied against the Smiths' property for a fence violation. The HOA assessed fines against the Smiths each month from March 2010 through September 2011. The Smiths moved back into the Cedar Hills home in September or October 2011.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law.[2] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[3] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[4]

---

[2] FED. R. CIV. P. 56(a).

[3] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[4] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

III.  DISCUSSION

The Fair Housing Act ("FHA") prohibits discrimination in housing on the basis or race, color, religion, sex, national origin, familial status, and disability.[5]  The FHA makes in unlawful

> [t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—(A) that buyer or renter, (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter.[6]

The Utah Fair Housing Act ("Utah FHA") also makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of the sale or rental of any dwelling or in providing facilities or services in connection with the dwelling."[7]

Under the FHA, discrimination includes:

> (A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises . . . [or]
> (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.[8]

The Utah FHA similarly states that a discriminatory housing practice includes:

---

[5] 42 U.S.C. §§ 3601-3619.

[6] 42 U.S.C. § 3604(f)(1).

[7] Utah Code Ann. § 57-21-5(1)(b).

[8] 42 U.S.C. § 3604(f)(3)(A), (B).

> (a) a refusal to permit, at the expense of the person with a disability, reasonable modifications of existing premises occupied or to be occupied by the person if the modifications are necessary to afford that person full enjoyment of the premises . . . ; [or]
> (b) a refusal to make reasonable accommodations in rules, policies, practices, or services when the accommodations may be necessary to afford the person equal opportunity to use and enjoy a dwelling.[9]

The initial dispute between the parties is whether this case concerns a modification or accommodation. Defendants argue that this case concerns a request for an accommodation, while Plaintiff insists that this case concerns a request for a modification. Plaintiff has focused her claims on the issue of modification, rather than an accommodation.

> Under the Fair Housing Act, a reasonable *modification* is a structural change made to the premises whereas a reasonable *accommodation* is a change, exception, or adjustment to a rule, policy, practice or service. A person with a disability may need either a reasonable accommodation or a reasonable modification, or both, in order to have an equal opportunity to use and enjoy a dwelling . . . .[10]

This case appears to involve both a modification and accommodation. While Plaintiff made a modification to her backyard by building the cedar enclosure, Plaintiff required an accommodation of the CC&Rs and Design Standards of the HOA, which prohibited such an enclosure. Ultimately, however, the modification/accommodation distinction is irrelevant for the purposes of this Motion. Even if the Court accepts Defendants' argument that this case concerns a request for an accommodation, Defendants are not entitled to summary judgment.

---

[9] Utah Code Ann. § 57-21-5(4)(a), (b).

[10] Dep't of Hous. & Urban Dev. & Dep't of Justice, Joint Statement of the Department of Housing and Urban Development and the Department of Justice, Reasonable Modifications Under the Fair Housing Act (March 5, 2008).

Under the FHA, a discriminatory housing practice includes the "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."[11] Defendants argue "that when the accommodation is not necessary to enjoy full use of the property, such as when the 'qualified individual' does not live there and has no immediate plans to live there, the accommodation is not required."[12] Defendants argue that they did not violate the law in this matter "because they accommodated the Smiths' cedar enclosure while the Smiths resided in the home in Cedar Hills" and after Plaintiff moved, "the accommodation was not required."[13] Defendants assert that "[s]ince the Smiths did not occupy, use or enjoy their home in Cedar Hills at the time the HOA fined them for the noncompliant cedar enclosure, the Defendants in this matter did not violate the Fair Housing Act or the Utah Fair Housing Act."[14]

Even if the Court accepts Defendants' construction of the FHA and Utah FHA, it does not follow that Defendants are entitled to summary judgment. While Defendants assert that they accommodated the cedar enclosure when Plaintiff resided at the home, there is evidence to the contrary. Specifically, there is evidence from which the jury could find that Plaintiff requested a reasonable accommodation on June 3, 2006, and was denied that request on July 11, 2006. There is also evidence that the Smiths requested a reasonable accommodation on July 21, 2006, and

---

[11] 42 U.S.C. § 3604(f)(3)(B).

[12] Docket No. 8, at 8.

[13] *Id.* at 9.

[14] Docket No. 11, at 3.

that Defendants denied that request through their silence and later actions. Courts have made clear that "a violation occurs when a resident is first denied a reasonable accommodation [or modification]."[15]

Further, Defendants focus on the fact that the HOA did not fine the Smiths while they were living at the Cedar Hills home. However, Plaintiff's claims and the evidence are not limited to the assessments levied against them. Thus, even if the HOA only assessed fines after Plaintiff had moved, there is still evidence from which a jury could find a violation when the Smiths were denied a reasonable accommodation in the summer of 2006.

Moreover, Plaintiff's use of the home during the relevant period is in dispute. Plaintiff testified that she always intended to move back to the Cedar Hills home. She also testified that the family went back and forth from the home. Plaintiff's husband similarly testified that they went back and forth between the homes and used the Cedar Hills home as a vacation home when not rented. The length of these visits and the continuing need for a modification/accommodation are unclear and are matters better left to the jury.

In addition, Defendants failed to address Plaintiff's claims for disparate treatment. Based upon this failure, the Court is not able to adequately analyze these claims and summary judgment is not appropriate.

---

[15] *Bryant Woods Inn, Inc. v. Howard Cnty., Md.*, 124 F.3d 597, 602 (4th Cir. 1997).

## IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 8) is DENIED. The hearing set for November 4, 2013, is STRICKEN.  The Court will refer this matter to a Magistrate Judge for a settlement conference by separate notice.

DATED   October 29, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge